**Bobby Gene PELTON et al., Appellants,**

v.

**Mary Eady DAWLEY et al., Appellees.**

**No. 5757.**

Court of Civil Appeals of Texas, Waco.

Sept. 22, 1977.

Rehearing Denied Oct. 20, 1977.

L. L. Geren, Bradley & Geren, Groesbeck, for appellants.

Joe Cannon, Cannon, Cannon & Reed, Groesbeck, for appellees.

HALL, Justice.

J. B. Pelton died in Limestone County on February 17, 1974. At the time of his death he owned a checking account in The Farmers State Bank, Groesbeck, Texas, with a balance of $4,402.93, as well as certain real property. The plaintiffs in this case, Bobby Gene Pelton and Joe Thomas Pelton are the deceased's only heirs. Mary Eady Dawley was the deceased's niece. After the deceased's death, Mrs. Dawley made two checks against the deceased's checking account which were honored by the bank. They liquidated the account. The first check was dated February 8, 1975, was in the amount of $2,500.00, and was payable to Mrs. Dawley's three sons. The second check, dated March 20, 1975, was in the amount of $1,902.93, and was payable to

Mrs. Zuma Eady, who was Mrs. Dawley's mother. Mrs. Zuma Eady died on July 30, 1975, and Mrs. Dawley was appointed administratrix of her estate. The plaintiffs brought suit to recover the $4,402.93 against Mrs. Dawley individually and as administratrix of the estate of Zuma Eady, and against the bank. Mrs. Dawley's brother, Arvin D. Eady, who is Mrs. Eady's only other surviving heir, was also joined as a defendant. In addition to their actual damages, plaintiffs also pleaded for $10,-000.00 exemplary damages against Mrs. Dawley and Mrs. Eady's estate, alleging that Mrs. Dawley and Mrs. Eady willfully and maliciously conspired and acted in the premises to deprive them of the money in the checking account. Bank and the other defendants answered with general denials. Bank filed a cross-claim against Mary Eady Dawley, in the event it was liable to plaintiffs. Mrs. Dawley answered the cross-claim with a general denial.

Soon after plaintiffs Bobby Gene Pelton and Joe Thomas Pelton filed their suit, Mary Eady Dawley filed an application for an administration with will annexed of the estate of the deceased, J. B. Pelton. The purported holographic will of the deceased was attached to the application. The following is a complete reproduction of this instrument:

Bobby Gene Pelton and Joe Thomas Pelton contested the application. Eventually, their suit for conversion of the bank account funds and Mary Dawley's action for administration with will annexed of the deceased's estate were consolidated for trial.

After a hearing without a jury on the consolidated cases, the document set forth above was ordered probated as the deceased's last will and testament, Mary Eady Dawley was appointed administratrix with the will annexed of the deceased's estate, and it was further decreed that "the money that was in the bank in the amount of $4,402.93 is awarded to the said defendant, Mary Eady Dawley."

Findings of fact and conclusions of law were not requested by the parties, and none were filed by the court. However, the judgment necessarily rests upon an implied finding that the purported will names defendant-proponent Mary Eady Dawley as beneficiary. Plaintiffs-contestants attack this finding contending the writing does not identify Mrs. Dawley as a beneficiary within its legible terms. We sustain this contention and reverse the judgment.

There is evidence that the instrument is in the handwriting of the deceased, and that the signature at the end is the deceased's signature. There is also evidence that Mrs. Dawley was kind and attentive to the deceased during his latter years and especially during the last fifteen months of his life when he was in a rest home.

Only two witnesses attempted to decipher the writing in question. The first testified as follows:

Q. Can you read that?

A. It is hard. It looks like February the 14th, 1976? Something about my house and don't let him have any money. Keep cemetery clean. That is about all I can read.

Q. You can't read the rest of it?

A. And everything honey—is that honey?

Q. I don't know. I am asking you.

A. It looks like it and everything honey.

Q. Everything honey?

A. Yes, that is what I would say that is. It is hard to read.

Q. It is quite difficult to make out, isn't it, Mrs. Harris?

A. Not the signature. I have seen it lots of times.

Q. But I am talking about what the purported will says.

A. Yes, sir.

The second testified:

Q. Can you read that to us?

A. February 14th, 1974, I believe. It might be a P.M. also. Joe was here. Don't want money. Don't let him have it. Him allowed in house if he takes care of it. Keep my cemetery clean and something money. The money and everything. The rest of it I can't read.

Neither witness identified Mrs. Dawley or anyone as a designated beneficiary in the will.

Defendants say that the first two words in the last sentence in the purported will may be read either as "She Mary" or "The money." They decipher the whole instrument to read as follows:

Feb. 14, 1974

Joe was here want money don't let him have it. Let him live in house if he take care of it keep my cemetery clean and my money ["She Mary" or "the money"] and everything I have and all is yours.

J. B. Pelton

They contend that the trial court as the fact-finder was entitled to interpret the first two words in the last sentence as "She Mary," and that the extraneous proof sufficiently identifies the "Mary" as defendant Mary Eady Dawley. We overrule this contention. We hold that these two words are too illegible to bear other than speculative deciphering by the court. In any event an interpretation of them as "She Mary" would be against the great weight and preponderance of the evidence.

Accordingly, the judgment is reversed, and the case is remanded in its entirety for trial.

Reversed and remanded.